UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

RADLEY M. KING,

        Petitioner,

V.

THOMAS RICKS, Superintendent,
Upstate Correctional Facility,[1]

        Respondent.

**REPORT AND RECOMMENDATION**

01-CV-1971

---

## I. INTRODUCTION

Petitioner, Radley King, acting *pro se*, commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254. Petitioner is an inmate at the Lyon Mountain Correctional Facility. In 1998, he was convicted in a New York State court of three counts of First Degree Robbery and was sentenced to a term of imprisonment. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 19).

---

[1] Thomas Ricks, the named respondent in this action, was the superintendent of the correctional facility where Petitioner was incarcerated when he filed this action. However, given that Petitioner is now incarcerated in the Lyon Mountain Correctional Facility, the correct Respondent is Christ Mellas, the Superintendent of the Lyon Mountain Correctional Facility. 28 U.S.C. § 2243. In light of Petitioner's *pro se* status, the fact that this will not prejudice Respondent, and in the interests of court efficiency, this Court will deem the petition amended to change the name of Respondent to Christ Mellas.
    The Clerk of the Court is directed to terminate Thomas Ricks as Respondent, add Christ Mellas, Superintendent of the Lyon Mountain Correctional Facility, as the new Respondent, and revise the caption of this case accordingly.

## II. BACKGROUND

**A.   Facts**

According to testimony presented at Petitioner's state court trial, on the evening of January 12, 1998, Petitioner and two accomplices robbed an "Aldi's" convenience store in Ballston Spa, New York. (T at 655 - 724).[2] As two employees of Aldi's were closing the store, Petitioner, along with Freddie Lee Toms ("Toms") and Anthony J. Mack ("Mack"), forced their way in. (Id.). Toms was armed with a gun and Mack carried a machete. (T at 656, 734). According to the trial testimony, Petitioner participated in the robbery by directing one of the employees to put the money from her register into a bag. (T at 742-745). Petitioner also assisted Toms in taking money from the store's office. (Id.)

Toms' wife, Barbara Toms, told the police that Petitioner was involved in the robbery and that he had been at her house both before and after the crime. (T at 837, 847-848). Barbara Toms was unable to give the police Petitioner's actual name, but she did give them his street name, as well as a physical description. (SH at 68)[3]. Shortly thereafter, the police returned to Barbara Toms with a photograph of Petitioner for confirmation of his identity. (SH at 74). From that photograph, Barbara Toms confirmed Petitioner's identity as the man who was at her house before and after the robbery. Id.  Petitioner was later arrested.

On February 26, 1998, a Saratoga County grand jury issued Indictment Number M-

---

[2] References preceded by "T" are to the transcript pages of Petitioner's trial. Petitioner was represented by counsel at trial.

[3] References preceded by "SH" are to the transcript pages of Petitioner's Suppression and Wade hearing, held on July 13, 1998.

050-1998, charging Petitioner with Robbery in the First Degree, in violation of New York Penal Law ("N.Y.P.L.") § 160.15(2)(armed with a deadly weapon)[4]; Robbery in the First Degree, in violation of N.Y.P.L. §160.15(3)(use or threatened use of a dangerous instrument); and Robbery in the First Degree, in violation of N.Y.P.L. § 160.15(4)(display of a pistol, revolver or other firearm).  Co-defendants Toms and Mack were charged with the same offenses.  Petitioner's attorney entered a plea of not guilty to all charges on his behalf.

Toms entered into a plea agreement at the start of trial and Mack entered into a plea agreement during the trial.  Both co-defendants testified as witnesses for the prosecution.

**B.    State Trial Court Proceedings**

The Honorable Jerry J. Scarano, Saratoga County Court Judge, presided over Petitioner's trial court proceedings.  On July 13, 1998, Judge Scarano conducted a Suppression and Wade[5] Hearing concerning identification testimony and a statement made by Petitioner.  (SH at 1).

As noted above, the police used a photograph to help confirm the identity of Petitioner.  Id.  Petitioner argued that the use of the photograph was unduly suggestive and that the witness, Barbara Toms, should not be allowed to testify.  Judge Scarano stated that the photograph identification was not the basis for arrest, but was merely one step in an ongoing investigation.  Id. at 110.  Judge Scarano further stated that the photo was used merely to confirm Petitioner's identity, and that Barbara Toms was already familiar with who he was.  Id.  Accordingly, the court ruled that Mrs. Toms's identification testimony could be

---

[4] Unless otherwise indicated, all references to the N.Y.P.L. are to McKinney 1998.

[5] A Wade hearing is a hearing to determine the reliability and admissibility of witness identifications.  United States v. Wade, 388 U.S. 218 (1967).

3

offered at trial. Id.   Petitioner also argued that an incriminating statement that he made to the police should be suppressed.  Testimony from police officers at the Suppression Hearing revealed that Petitioner received the *Miranda* warnings and was given the opportunity to call an attorney.  Judge Scarano held that the confessional statement given by Petitioner was lawfully obtained.  Id.

Petitioner's trial began on August 4, 1998. Petitioner was tried as an accomplice to the robbery.  (T at 7-8).  On August 15, 1998, the jury found Petitioner guilty on all three counts of Robbery in the First Degree.  (T at 1619).

On October 9, 1998, Judge Scarano sentenced Petitioner to three concurrent terms at a minimum of ten years and a maximum of twenty years on his convictions.  (S at 37-38)[6].  Petitioner was also ordered to pay restitution to the victims in the amount of $3,296.00.  Id.

**C.   State Appellate Proceedings**

Petitioner, through his appellate counsel, appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court.  Petitioner raised the following four arguments in support of his appeal: (1) the trial court committed reversible error in granting the People's peremptory challenge to a potential juror, (2) the trial court erred when it failed to respond meaningfully and appropriately to the jury's request for further instruction as to the definition of robbery and as to defendant's status as an accomplice,  (3) the trial court erred by failing to respond to the jury's inquiry regarding potential juror harassment, and (4) the sentence was harsh and excessive.

In a decision issued on November 22, 2000, the Appellate Division affirmed

---

[6] References preceded by "S" are to the transcript pages of the sentencing proceeding held before Saratoga County Court Justice Jerry J. Scarano on October 9, 1998.

Petitioner's conviction.  People v.King, 716 N.Y.S.2d 141 (3d Dep't 2000).  The Appellate Division held that there was no error committed in granting the peremptory challenge.  Id.  With respect to Petitioner's argument regarding the jury's request for instructions, the Appellate Division found that the trial court "properly exercised its discretion by meaningfully responding to the jury's actual request." Id. at 144.  The Appellate Division found that the trial court handled the jury's inquiry regarding potential juror harassment inappropriately.  Id.  However, the Appellate Division concluded that the trial court's failure in this regard "did not seriously prejudice defendant, as it 'did not concern the crimes charged or the evidence in the case, much less any key issue.'"  Id. at 145  (citing People v. Agosto, 74 N.Y.2d 963, 966 (1989)).  The appeals court rejected Petitioner's argument that his sentence was harsh and excessive, stating that it was below the maximum penalty available for his crime.  Id. at 146.

On April 6, 2001, the New York Court of Appeals denied Petitioner's motion for leave to appeal.  People v.King, 96 N.Y. 2d 802 (2001).

Thereafter, on July 11, 2001, Petitioner filed a CPL § 440.10(d) Motion to vacate his judgment of conviction on three grounds; (1) that the Wade hearing seeking to suppress his out of court identification should have been granted, (2) that his indictment should have been dismissed for insufficient evidence, and (3) that the instructions given to the jury after their request for further instructions during deliberations were improper.  The trial court denied Petitioner's motion by Decision and Order dated August 28, 2001.  Petitioner's motion seeking leave to appeal that decision was denied on October 10, 2001.[7]

---

[7] The trial court's Decision and Order dated August 28, 2001 and the denial of Petitioner's leave to appeal that decision are not included in the record.  However, Petitioner does not contest these facts, so this Court will accept Respondent's dates as to these orders.

**D.     Federal Habeas Corpus Proceedings**

Petitioner commenced this action on December 27, 2001, by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). Petitioner attempted to file an Amended Petition, which was rejected by the court for lack of clarity and completeness on February 2, 2002. (Docket No. 5). Petitioner filed a Second Amended Petition on May 17, 2002, clarifying the claims made in his original Petition. (Docket No. 7). Thereafter, the Respondent filed submissions outlining its position. (Docket No. 12 & 13).

### III. DISCUSSION

**A.     Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits." 28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001). Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id. A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

If, however, the federal court cannot determine whether the state court has adjudicated a Petitioner's federal constitutional claims on the merits, the federal constitutional claims are considered as not having been determined on the merits and, as such, the federal court applies the pre-AEDPA, *de novo*, review standard, even where the petition was filed after the effective date of the statute. See Sellan, 261 F.3d at 314; Boyette v. Lefevre, 246 F.3d 76, 89, 91 (2d Cir. 2001).

A federal claim is adjudicated on the merits when the state court "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan, 261 F.3d at 312. In other words, in order to invoke the deferential standards of 2254(d)(1), "the state court need only dispose of the Petitioner's federal claim on substantive grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required." Aparicio v. Artuz, 269 F.3d 78, 93-94 (2d Cir. 2001) (citing Sellan, 261 F.3d at 312). If there is no indication that the federal claim has been decided on procedural grounds, the federal claim will be deemed to have been adjudicated on the merits. Brown v. Artuz, 283 F.3d 492, 498 (2d Cir. 2002).

**B.   Petitioner's Claims**

Petitioner asserts four claims in support of his petition: (1) that the Wade hearing held on July 13, 1998 violated his right to Due Process because the identifying witness was not present for his counsel to examine and was still allowed to testify at trial, (2) that the trial court responded inappropriately to the jury's request for information during deliberations, (3) that the indictment should have been dismissed for insufficient Grand Jury minutes, and (4) that the trial court's failure to respond to a jury question asking whether a juror was required to "put up" with being ridiculed was reversible error.

   **1.   Identification Testimony**

Petitioner asserts that his Fourteenth Amendment right to Due Process was violated when an identifying witness was allowed to testify at trial even though she did not appear at the Wade hearing. As noted above, Barbara Toms, the wife of Petitioner's accomplice, Freddie Toms, identified Petitioner to the police as one of the perpetrators of the robbery.

Petitioner asserts that the identification gained from Barbara Toms was a "show-up" identification and was unduly suggestive because the police showed her a photograph of him as part of their investigation. Barbara Toms testified at trial that Petitioner was at her house before and after the robbery. (T at 837, 847-848). For the reasons discussed below, Petitioner's claim is without merit[8].

A criminal defendant has a due process right under the Fourteenth Amendment to be free from pretrial identification procedures "that are so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384(1968); see also Neil v. Biggers, 409 U.S. 188, 196(1972); United States v. Eltayib, 88 F.3d 157, 166-67 (2d Cir.1996). Nevertheless, even where a pretrial identification procedure was unduly suggestive, a witness may identify the defendant in court if the in-court identification is independently reliable. See Eltayib, 88 F.3d at 167; United States v. Tortora, 30 F.3d 334, 338 (2d Cir.1994). Factors used to determine independent reliability include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [the witness'] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." United States v. Wong, 40 F.3d 1347, 1359 (2d Cir.1994) (citations omitted).

Furthermore, the habeas corpus petitioner faces the added burden of overcoming the presumption of correctness afforded to a state court's factual findings. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only by clear and convincing evidence.

---

[8] Respondent's Memorandum of Law incorrectly treats this issue as a Fourth Amendment claim. (Docket No. 13 p. 7).

See 28 U.S.C. § 2254(e)(1).

Even assuming that the identification procedure used by the police officers in showing a photograph of Petitioner to Barbara Toms was unduly suggestive, her identification of him was independently reliable. As Judge Scarano stated at Petitioner's Suppression and Wade Hearing, the photograph was used merely to confirm Petitioner's identity, the witness was already familiar with who he was. (SH at 110). Indeed, Petitioner spent time at Barbara Toms' house before and after the commission of the robbery. (T at 837, 847-848). She gave his description and street name to the police shortly after the robbery. (SH at 68). She then confirmed the photograph as being the same person she described. (SH at 74). Further, a review of the record demonstrates that Petitioner is unable to rebut the presumption of correctness afforded to the state court's factual findings. In addition to Barbara Toms and Petitioner's accomplices' testimony as to his involvement, the store clerk, Kylee Butchino, at Aldi's also identified him. (T at 756- 757).

Accordingly, Petitioner's claim for relief on this ground should be DENIED.

### 2. Jury Instructions

In his second and fourth claims for habeas relief, Petitioner alleges that the trial court responded inappropriately to the jury's requests during deliberations. For the sake of convenience, this Court will consider Petitioner's second and fourth claims together.

Petitioner's second claim stems from the jury's request to review various items of evidence and request for a "read back" of certain instructions, including the charges containing the definitions of "robbery," "firearms," and "accomplice." (T at 1510-14). The trial court provided the jury with the information that they requested. After the jury resumed deliberations, Petitioner's trial counsel requested a further instruction on the definition of

intent, which the court denied. (T at 1524-25). Petitioner claims that this was reversible error.

Petitioner's fourth claim for habeas relief also stems from a jury question to the trial court. During the course of their deliberations, the jury sent the trial court a note, which essentially asked, among other things, whether a juror was required to endure demeaning comments. (Trial Court's Exhibit N[9]) The jury's entire note was not read into the record and no instruction was made by the trial court in response to the question concerning potential harassment of one of the jury members by his or her peers. Petitioner claims that the trial court's failure to respond to the jury's question constituted an actionable constitutional violation.

The Supreme Court has held that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437(2004). Rather, a federal court reviewing a habeas claim based upon an improper jury instruction must determine "whether the ailing instruction so infected the entire trial that the resulting conviction violates due process." Id.

As a threshold matter, this Court must determine whether the trial court's instructions to the jury were improper under New York law. Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001) (holding that while a court "may not grant habeas relief for a 'mere error of state law,' . . . a finding that the petitioner was erroneously deprived of a jury instruction to which he was entitled under state law is the first step in the determination whether that error violated the petitioner's federal due process rights") (internal citation omitted); see also, Jackson v.

---

[9]Court's Exhibit N can be found in the state court records attached to Appellant's Brief to the Appellate Division Third Department.

11

Edwards, 404 F.3d 612, 621 (2d Cir. 2005) (holding the same).

With respect to Petitioner's second claim, a review of the record shows that the trial court responded properly to the jury's request for a re-read of various charges. In response to the jury's request, the court provided a supplemental instruction to the jury repeating its original instructions, which included an explanation of the definitions and elements of robbery in the first degree, as well as the standard for accomplice liability. (T at 1514-1524). After the jury resumed deliberations, Petitioner's trial counsel sought a further supplemental instruction on the definition of intent. (T at 1524-25). Having already charged the jury on the definition of intent (T at 1481-82), the trial court declined to re-read that instruction, on the grounds that the jury had not requested a re-read as to that issue. See CPL § 310.30[10]. This Court finds that Petitioner has failed to show that the trial court's refusal to re-read a charge previously given, in the absence of a request by the jury for the same, was erroneous as a matter of New York law under the circumstances. See Johnson v. Artuz, 2003 WL 22964566, *7 (E.D.N.Y. Sep. 3, 2003)(citing People v. Almodovar, 476 N.Y.S.2d 95, 98 (1984)(stating that the "sufficiency of a trial court's response is gauged by 'the form of the jury's question.'")(citations omitted). Petitioner's claim for relief on this ground should therefore be DENIED.

However, as to Petitioner's fourth claim for habeas relief, this Court finds that the trial court's failure to respond to one of the jury's questions was contrary to New York law. As noted above, in a note sent to the trial court, the jury asked, *inter alia*, whether a "jurist [*sic*]

---

[10] CPL 310.30 provides that the jury may request further instructions at any time during its deliberations and if it does so the court must "give such requested information or instruction as [it] deems proper."

have to but [*sic*] up with being degraded & belittled & laughed at." (Trial Court's Exhibit N).

Under New York law, the trial court is afforded discretion with respect to its responses to jury questions. However, the court "must respond meaningfully to the jury's inquires." People v. Lourido, 70 N.Y. 2d 428, 435 (1987); see also Hinds v. Ricks, No. 00-CV-3578, 2003 WL 21817799, *14 (E.D.N.Y. July 29, 2003) (discussing Lourido). In the present case, the trial court failed to provide any response to the jury's question concerning apparent juror harassment. At a minimum, a meaningful response would have included an instruction that "deliberations should be conducted politely, rationally and free from any fear, and that each juror should be respectful of each other." People v. Cochran, 755 N.Y.S.2d 388, 389 (1st Dep't 2003). Accordingly, this Court finds that the trial court's failure to respond meaningfully to the jury's inquiry was an error under New York law.

This Court must now determine whether the erroneous failure to respond to the jury's inquiry "was sufficiently harmful to make the conviction unfair." Davis, 270 F.3d at 123-24. In other words, having found an error by the trial court, this Court's task is to decide whether "the error 'so infected the entire trial that the resulting conviction violates due process.'" Id. (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

This Court finds that the trial court's error was not of a constitutional magnitude. First, it should be noted that "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Blazic v. Henderson, 900 F.2d 534, 542 (2d Cir. 1990) (quoting Henderson v. Kibbe, 431 U.S. 145 (1977)). In the present case, the trial court did not provide the jury with erroneous instructions, but rather omitted an instruction that he should have given. However, notwithstanding the trial court's failure to respond to the jury's inquiry regarding possible harassment, the jury ultimately reached a unanimous verdict and,

13

critically, when the jury was polled, each juror indicated his or her agreement with the verdict. (T at 1620-1622).

Second, and more importantly, there was ample evidence in the record to support Petitioner's conviction on all counts. Specifically, the testimony at trial indicated that Petitioner was present at the scene of the crime and was armed with a butcher knife during the course of the robbery. (T at 1220). Further, the testimony established that Petitioner actively participated in the robbery by instructing the store cashier to place money in a bag and by helping Toms remove money from the store's office. (T at 742-43, 45). Considering the record as a whole and this evidence in particular, this Court finds that Petitioner was not prejudiced by the trial court's error because the jury would have reached the same result even if the trial court had responded properly to their question concerning juror harassment. Accordingly, Petitioner's claim for habeas relief on this ground should be DENIED.

### 3. Dismissal of the Indictment based on Insufficient Grand Jury Minutes

Petitioner's third ground for relief is that the trial court erred when it did not dismiss the indictment based on insufficient Grand Jury minutes. However, any alleged defects in the grand jury proceedings are not cognizable on habeas review because Petitioner was convicted by a jury after a trial. That verdict necessarily renders any irregularities before the grand jury harmless as it establishes not only that there existed probable cause to indict the defendant, but also that the defendant was "in fact guilty as charged beyond a reasonable doubt." United States v. Mechanik, 475 U.S. 66, 68 (1986); Lopez v. Riley, 865 F.2d 30, 32 (2d Cir.1989) (holding that habeas petitioner's "claims of impropriety before the grand jury. . . [were]. . . cured in the trial before the petit jury, which convicted"). Accordingly, this claim is not cognizable on habeas review and should be DENIED.

## IV. CONCLUSION

Based on the foregoing, it is recommended that the Petition be DISMISSED. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, it is recommended that a certificate of appealability not issue. 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:	January 24, 2007
	Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b)**

of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

January 24, 2007

Victor E. Bianchini
United States Magistrate Judge